No. 2015-1548

# United States Court of Appeals for the Federal Circuit

_____

ULF BAMBERG, PETER KUMMER and ILONA STIBUREK

*Appellants,*

v.

JODI A. DALVEY and NABIL F. NASSER

*Appellees.*

*Appeal from the United States Patent and Trademark Office*
*Patent Trial and Appeal Board*
*(Interference Nos. 105,961; 105,964; and 105,966)*

## BRIEF OF APPELLEES

Devan V. Padmanabhan
Paul J. Robbennolt
Nathan J. Witzany
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
dpadmanabhan@winthrop.com
probbennolt@winthrop.com
nwitzany@winthrop.com
*Attorneys for Appellees*

**Form 9**

FORM 9.  Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____ v. _____

No. _____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party) _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

_____

_____

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____

_____

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____

_____

_____

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

_____

_____

_____        _____
            Date                              Signature of counsel

                                     _____
                                          Printed name of counsel

Please Note: All questions must be answered

cc: _____

124

# TABLE OF CONTENTS

Page No.

CERTIFICATE OF INTEREST

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF RELATED CASES ........................................................... 1

STATEMENT OF THE ISSUES ................................................................... 2

STATEMENT OF THE FACTS .................................................................... 3

I.    BACKGROUND OF THE TECHNOLOGY AT ISSUE .................... 3

      A.    Oez Discloses a Single Layer Transfer Paper ............................ 3

II.   THE BAMBERG PATENT APPLICATIONS ................................... 3

      A.    Bamberg Does Not Accurately Characterize Bamberg's
            Disclosure .................................................................................. 3

      B.    A "Face Up" Transfer Method Not The Only Functional
            Embodiment ............................................................................... 5

III.  THE DALVEY PATENTS ................................................................. 5

      A.    Dalvey's Transfer Sheets Are Not Limited to A "Face
            Down" Transfer Method ............................................................. 5

      B.    Whether Dalvey Discloses A Non-Melting White Layer
            Is Not a Critical Issue ............................................................... 6

IV.   THE '311 PATENT DEFINITION OF "WHITE LAYER" ................ 7

      A.    The Term "White Layer" Was Not Used in Most Claims .......... 7

      B.    The "White Layer" Limitation is Not The Sole
            Limitation of Importance ........................................................... 7

V.    THE "WHITE LAYER" LIMITATION ............................................. 8

A.    The Board's Determination of Scope .........................................8

B.    The Board Construed The Claims With Reference to Dalvey Disclosure ......................................................................9

SUMMARY OF THE ARGUMENT ....................................................11

ARGUMENT ........................................................................................15

I.    THE BOARD CORRECTLY DETERMINED THE SCOPE OF THE CLAIMS AT ISSUE BASED ON THE DALVEY DISCLOSURE ..................................................................15

A.    The Board Properly Followed *Agilent* ......................................15

B.    The Board Did Not Import a Functional Limitation Into the Claims ..............................................................................17

II.    SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FACT DETERMINATIONS ..........................................................21

A.    Standard of Review ................................................................21

B.    All of Bamberg's Involved Claims Include, Within Their Scope, a "White Layer" that Melts at Temperatures Below 220° C and Mixes with Other Layers ...........................22

C.    The Board Correctly Found that Bamberg's Claims Failed to Meet The Written Description Requirement .............23

1.    *Bamberg's Disclosure Does Not Provide Written Description Support for a "White Layer" that Melts at Temperatures Below 220° C and Mixes with Other Layers* ..........................................................23

2.    *Bamberg's Assertion That Its Specification Has Adequate Written Description For "White Layer" That Is Fusible at Temperatures Below 220° C Is Fatally Flawed* ..............................................................26

D.    *McMullin* Is On Point; Bamberg's Alternative Cases Are Not ............................................................................30

            1.     *McMullin*..........................................................................30

            2.     *Liebel-Flarsheim*.............................................................32

            3.     *Comark Communication*..................................................32

     E.     Even If Bamberg's Argument Were Reasonable, The Board's Determination Must Stand ..........................................33

III.     BAMBERG'S ALTERNATIVE CONSTRUCTIONS OF "WHITE LAYER" DO NOT CHANGE THE RESULT ..................34

     A.     Dalvey Defined "White Layer" Term Not Used In Most Claims; Still Includes, Within Its Scope, "White Layer" Fusible At Temperatures Below 220° C ...................................34

     B.     The Broadest Reasonable Interpretation of "White Layer"..........................................................................................35

     C.     Bamberg's "Alternative" Construction of "White Layer."........36

IV.     THE BOARD CORRECTLY DENIED BAMBERG'S MOTION 5 TO AMEND THE CLAIMS ..........................................37

     A.     The Board's Decision .............................................................37

     B.     Bamberg's Argument That It Cannot Provide a Claim Chart to Prove a Negative is Flawed .......................................39

     C.     Bamberg's Argument That it Explained Support For the Amended Claims in the Statement of Facts Is Also Flawed ....................................................................................40

     D.     The Board Did Not Err By Not Redeclaring the Interference With A Narrower Scope. ......................................41

     E.     Reversal of the Board's Denial of Bamberg's Motion 5 to Amend the Claims Would Not Change the Result ..................44

CONCLUSION AND RELIEF SOUGHT .............................................45

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE UNDER RULE 32(a)(7)(C)

# TABLE OF AUTHORITIES

Page No.

**Cases:**

*Agilent Techs., Inc. v. Affymetrix, Inc.*,
    567 F.3d 1366 (Fed. Cir. 2009) ....................................................11

*Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*,
    616 F.3d 1249 (Fed. Cir. 2010) ....................................................34

*Bilstad v. Wakalopulos*,
    386 F.3d 1116 (Fed. Cir. 2004) ..............................................27, 28

*C R Bard, Inc. v. U. S. Surgical Corp.*,
    388 F.3d 858 (Fed. Cir. 2004) ....................................................19

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013) ....................................................20

*Comark Commc'n, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998) ..............................................32, 33

*Falkner v. Inglis*,
    448 F.3d 1357 (Fed. Cir. 2006) ..............................................21, 34

*Hitzeman v. Rutter*,
    243 F.3d 1345 (Fed. Cir. 2001) ....................................................21

*In re Spina*,
    975 F.2d 854 (Fed. Cir. 1992) ....................................................11

*Liebel-Flarsheim v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ....................................................32

*McMullin v. Carroll*,
    153 F. App'x 738 (Fed. Cir. 2005) ..........................................30, 31

*OpenTV, Inc. v. Apple, Inc.*,
    2015 WL 3544845 (N.D. Cal. June 5, 2015)..................................6

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................6, 15

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005) ....................................................................19

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) ....................................................................29

*Stevens v. Tamai*,
    366 F.3d 1325 (Fed. Cir. 2004) ....................................................................21

*UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*,
    2006 WL 825460 (N.D. Cal. Mar. 30, 2006) ...............................................19

## **Rules:**

37 C.F.R. §41.110(c).............................................................................13, 37, 39, 40

37 C.F.R. §41.201 ...............................................................................................43

## <u>STATEMENT OF RELATED CASES</u>

There has been no other appeal in or from this same civil action or proceeding in the lower court or body before this or any other appellate court.

The case *Jodi A. Schwendimann f/k/a Jodi A. Dalvey v. Arkwright Advanced Coating, Inc.*, Civ. Action No. 11-cv-820, currently pending before the United States District Court, District of Minnesota, will be directly affected by this Court's decision in the pending appeal.

## **STATEMENT OF THE ISSUES**

1.    Because the U.S. Patent & Trademark Office Patent Trial and Appeal Board ("Board") did not, in fact, require a functional limitation that the "white layer" (*see infra*, Statement of the Facts, §IV(A) regarding meaning of "white layer") melt and mix at temperatures below 220° C, as will be discussed herein, Appellants' ("Bamberg's") first statement of the issues is more appropriately characterized as:  Whether the Board correctly determined that, construed in light of Appellees' ("Dalvey's") disclosure, the scope of Bamberg's claims covered embodiments in which the "white layer" is fusible at temperatures below 220° C.

2.    In view of the foregoing, Bamberg's second statement of the issues is more appropriately characterized as:  Whether the Board correctly determined that Bamberg's disclosure prohibits claims covering embodiments in which the "white layer" is fusible at temperatures below 220° C, and thus Bamberg's claims fail to meet the written description requirement of 35 U.S.C. §112.

## STATEMENT OF THE FACTS

Pursuant to Federal Circuit Rule 28(b), Dalvey limits this Statement of the Facts to specific areas of disagreement with Bamberg's Statement of the Facts (Appellant's Brief, pp. 5-16).

## I.    BACKGROUND OF THE TECHNOLOGY AT ISSUE

### A.    Oez Discloses a Single Layer Transfer Paper

Bamberg's discussion of U.S. Patent No. 5,665,476 to Oez ("Oez") is not relevant to this appeal.  Regardless, Oez discloses that all the ingredients for receiving an image, providing a white background, and providing adhesion must be mixed together and homogenized such that there are no distinct layers for any of receiving of an image, providing a white background, or providing adhesion, and particularly no distinct image receiving layer and white layer.  Interference 105,964, Ex. 2048, ¶ 52.  Bamberg's expert witness, Mr. Xu, agrees.  Interference 105,964, Ex. 1530, p. 203, l. 5 – p. 205, l. 4.

## II.    THE BAMBERG PATENT APPLICATIONS

### A.    Bamberg Does Not Accurately Characterize Bamberg's Disclosure

Contrary to Bamberg's representations about the transfer sheet described in its applications, Bamberg's disclosed transfer sheet is more limited than simply containing (1) a removable substrate coated with silicone, (2) a hot-melt adhesive, (3) a white layer, and (4) an ink-receptive layer.  Appellants' Brief, p. 7, ll. 3-6.

3

Rather, Bamberg discloses that the transfer sheet more specifically contains (1) a removable substrate coated with silicone, (2) a hot-melt layer, which has dispersed spherical (globular) polyester particles of a granular size of less than 30 µm (*see* A1471, ll. 25-28), (3) a white layer, comprised of permanently elastic plastics which are non-fusible at ironing temperatures (i.e., up to about 220° C) and which are filled with white pigments, also non-fusible up to about 220° C (*see* A1471-72), and (4) an ink-receiving layer.

The white layer disclosed by Bamberg must not melt at temperatures below 220° C, a fact emphasized repeatedly by Bamberg. *See, e.g.*, A1471-72; A1472, ll. 17-18; A1472, ll. 30-32; A1472-73; A1481, ll. 15-17; A1485-87, claims 1-16. Likewise, the white layer disclosed by Bamberg cannot mix, to any extent, with any other layers of the Bamberg transfer sheet, another requirement emphasized repeatedly by Bamberg. *See, e.g.*, A1472, ll. 1-6; A1474, ll. 1-5; A1474, ll. 9-21; A1480, ll. 13-18. The inventor, himself, confirms that he did not, at the time he filed his application, possess an invention with a white layer that melts at conventional iron-pressing temperatures and mixes, to any extent, with the adhesive layer. A1911, ¶ 9 ("[W]e developed a white background layer that nonetheless formed a strong bind with the ink-receiving layer but did not melt at conventional iron-pressing temperatures (i.e., temperatures up to about 220º C)."). As such, Bamberg describes only transfer sheets incorporating a white layer that

must not melt or become molten at temperatures below 220° C and must not mix, to any extent, with other layers.

**B.    A "Face Up" Transfer Method Not The Only Functional Embodiment**

Bamberg's alleged factual assertion that a "face up" transfer method is necessary for an ink-jet transfer sheet to be fully functional is a misrepresentation of the facts.    Specifically, Ms. Schwendimann has proven that a "face down" transfer method of an embodiment of her disclosed ink-jet transfer sheets sufficiently transfers an image to a black textile.    A2115-18, ¶¶ 8-15.    As such, both "face down" and "face up" transfer methods are sufficient for transfers to dark textiles.

**III.    THE DALVEY PATENTS**

**A.    Dalvey's Transfer Sheets Are Not Limited to A "Face Down" Transfer Method**

Bamberg incorrectly asserts that Dalvey's solution in U.S. Patent Application No. 09/391,910 ("the '910 application") is limited to a "face down" transfer method.[1]    While Dalvey, in the '910 application, indeed discloses an embodiment where the image layer is applied to the base material so that the image

---

[1] Bamberg's assertion that Dalvey was "hoping" that ink would show through the white pigment layer is nothing more than unsupported attorney argument.  In fact, Dalvey has already proven that a "face down" transfer method of an embodiment of its disclosed ink-jet transfer sheets sufficiently transfers an image to a black textile.  A2115-18, ¶¶ 8-15.

layer contacts the base material, heat is applied, and the image is transferred to the base in a mirror image (*see* A1498-99), claims that claim priority to the '910 application are not so limited.[2]  While Dalvey does not admit that such an embodiment is the only disclosed embodiment, as Bamberg suggests, this Court has nonetheless "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005); *see also OpenTV, Inc. v. Apple, Inc.*, No. 14-CV-01622-HSG, 2015 WL 3544845, at *9 (N.D. Cal. June 5, 2015) (citing *Phillips*, 415 F.3d at 1323).

### B.    Whether Dalvey Discloses A Non-Melting White Layer Is Not a Critical Issue

Whether Dalvey discloses a non-melting white layer is neither relevant nor a critical issue, contrary to Bamberg's suggestion.  Appellants' Brief, p. 8, ll. 16-17. The issues on appeal relate instead to whether Bamberg's disclosure supports the scope of the claims, as more appropriately identified in the Statement of the Issues, *supra*.

---

[2] Bamberg's reference to an "aha" moment of conception is not relevant to this appeal.  Regardless, Dalvey had possession of a transfer sheet structure suitable for both "face down" and "face up" transfer methods at least as early as June 1996. Interference 105,964, Dalvey/Schwendimann Priority Motion 5, p. 4, ll. 12-13; *see also* Interference 105,964, Ex. 2037, ¶¶ 7, 23-25.

## IV.    THE '311 PATENT DEFINITION OF "WHITE LAYER"

### A.    The Term "White Layer" Was Not Used in Most Claims

For the sake of brevity, the term "white layer" has been used in various contexts to generally refer in shorthand to a layer containing a white or luminescent pigment (*see, e.g.,* A0465-66; *see also* Appellants' Brief, p. 13, ll. 13-15 ("...so called 'white layer', i.e., the layer in the transfer article that contains a white pigment to provide the contrast between the printed image and the dark textile.")) and will continue to be used in that manner herein.  In contrast, as noted by Bamberg, U.S. Patent No. 6,884,311 expressly defines the term "white layer." A1841, 3:22-25.  However, not all of the claims at issue actually use the term "white layer," and in fact, most do not.  *See* A1233-40, all claims; A0221-30, claims 31-40, 46, and 47; A0576-79, claims 1, 2, 4, 6-10, 12, and 13; A1375-77, claims 1-15.

### B.    The "White Layer" Limitation is Not The Sole Limitation of Importance

Contrary to Bamberg's assertion that the "white layer" limitation is the only limitation at issue (Appellants' Brief, p. 13, ll. 13-15), for the sake of clarification, the "white layer" limitation is simply the only limitation at issue on this appeal (*id.* at p. 2).  Bamberg's disclosure, however, further lacks support for a number of other claim limitations.  *See* A0471, l. 15 – A0474, l. 15; A0476, l. 10 – A0477, l. 12; A0477, l. 13 – A0480, l. 4.

## V.    THE "WHITE LAYER" LIMITATION

### A.    The Board's Determination of Scope

As described above, the white layer disclosed by Bamberg must not melt at temperatures below 220° C (*see, e.g.*, A1471-72; A1472, ll. 17-18; A1472, ll. 30-32; A1472-73; A1481, ll. 15-17; A1485-87, claims 1-16) and cannot mix, to any extent, with any other layers of the Bamberg transfer sheet (*see, e.g.*, A1472, ll. 1-6; A1474, ll. 1-5; A1474, ll. 9-21; A1480, ll. 13-18).  In contrasting her invention during the interference proceeding, Dalvey explained that "[c]onstrued in light of the specification of the Dalvey Patents...the white or opaque layer necessarily must melt, and must combine with other layers."  A0466, ll. 2-3.[3]  Indeed, Dalvey discloses that the "white layer" melts at a wide range of temperatures, from 20° C to 300° C.  *See, e.g.*, A1842, 6:10-13 (40° C to 220° C); A1842, 6:30-33 (20° C to 225° C); A1842, 6:55-56 (same); A1843, 7:9-10 (43° C to 300° C); A1844, 10:63-68 (200° F to 400° F).  Nonetheless, as Bamberg points out, no melting and mixing limitation is expressly required by the claims.  Appellants' Brief, p. 14, ll. 19-20.

---

[3] In contrasting her invention, Dalvey merely distinguished her invention from the absolute extreme of no melting and mixing described by Bamberg.  Dalvey did not limit the claims of her patents to the absolute and opposite extreme of forming a homogenous mixture between the white layer and another layer or layers upon melting of the white layer.  Instead, again contrasting only from the extreme described by Bamberg where melting and mixing of the white layer of any kind is prohibited, Dalvey asserted nothing more than that the claims include a white background layer that melts and mixes, to at least some extent, with other layers.

Accordingly, where no express limitations are provided in the claims, the Board correctly determined that the scope of the claims covered both embodiments in which the "white layer" is fusible and those in which the "white layer" is non-fusible at temperatures below 220° C.  A0011, ll. 22-26.

### B.    The Board Construed The Claims With Reference to Dalvey Disclosure

Contrary to Bamberg's assertion (Appellants' Brief, p. 15, ll. 13-14), the Board did, in fact, construe the copied claims relative to the Dalvey disclosure. Indeed, the Board expressly stated that "the scope of the copied claims is to be determined based on the written description of the Dalvey patents."  A0021, ll. 4-6. In doing just that, the Board held that "Dalvey does not require the use of a plastic that is non-fusible at ironing temperatures up to about 220° C."  *Id.* at ll. 18-19. Based on that finding, the Board concluded that Dalvey's disclosure supported a "generic" claim scope where any suitable "white layer" may be used.  *See id.* at ll. 13-14.   The Board neither relied on the Bamberg specification in making that determination nor included any "cut-off temperature for melting," as misconstrued by Bamberg (*see* Appellants' Brief, p. 15, ll. 18-20).

In contrast, the Board concluded that Bamberg describes only a "sub-generic" claim scope where the "white layer" must be non-fusible at ironing temperatures up to about 220° C.  A0021, ll. 14-17.  In this regard, the Board

determined that Bamberg's disclosure could not support the same generic claim scope supported by Dalvey's disclosure.  A0021, ll. 23-24.

## SUMMARY OF THE ARGUMENT

Contrary to Bamberg's assertions, the Board did not erroneously construe the "white layer" limitation of the involved claims to include a functional limitation that the "white layer" melt and mix at application temperatures below 220° C.  The Board, in fact, did not add **any** limitations to the claims during its analysis.  Instead, as plainly laid out in the Board's decision and explained in detail below, the Board did nothing more than interpret the scope of the claims.

Indeed, the Board made very clear that it diligently followed *Agilent Technologies, Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1374 (Fed. Cir. 2009) (citing *In re Spina*, 975 F.2d 854, 856 (Fed. Cir. 1992)), which requires that "'[w]hen interpretation is required of a claim that is copied for interference purposes, the copied claim is viewed in the context of the patent from which it was copied.'" A0021-22 (Board's aptly-named "*Agilent*-based Analysis").  In doing so, the Board first determined that, on their face, the involved claims did not include a melting temperature limitation for the "white layer" (*see* A0009-11), a fact with which Bamberg vehemently agrees (*see, e.g.,* Appellants' Brief, p. 14, ll. 19-20).

Having determined that the claims did not include a melting temperature limitation for the "white layer," the Board determined that, in view of the Dalvey disclosure, the involved claims included, within their scope, (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, **as well**

11

**as** (2) embodiments in which the "white layer" is fusible at temperatures below 220° C. A0011, ll. 22-26. Specifically important to this appeal, the Board found that Dalvey discloses embodiments in which the "white layer" melts at temperatures below 220° C, and thus, the involved claims must at least include, within their scope, embodiments in which the "white layer" is **fusible** at temperatures below 220° C.

Continuing to follow *Agilent*, the Board, after having determined the proper scope of the claims and turning to Bamberg, determined that the "Bamberg white layer must be made of plastics that are **non-fusible** at ironing temperatures 'up to about 220°C'." A0021, ll. 15-17 (emphasis added). Accordingly, the Board concluded that Bamberg's disclosure did not support the same "generic" scope supported by Dalvey's disclosure, and as such, the involved claims, having scope covering at least those embodiments where the "white layer" is fusible at temperatures below 220° C, were not patentable to Bamberg. *See* A0021, l. 23 – A0022, l. 3.

While the Board reviewed both the Dalvey disclosure and the Bamberg disclosure during its analysis under *Agilent*, at no point did the Board ever construe the "white layer" limitation of the involved claims to include a functional limitation that the "white layer" melt and mix at application temperatures below 220° C, as Bamberg alleges. Instead, the Board merely interpreted the breadth of

12

the claims, and found that Bamberg's disclosure failed to support that breadth. As will be explained in further detail herein, both the evidence and case law precedent support the Board's decision and frustrate Bamberg's arguments.

The Board also did not err in denying Bamberg's Responsive Motion 5 ("Motion 5") to amend the claims or in not redeclaring, *sua sponte*, the interference with narrower claims. The Board properly recognized that 37 C.F.R. §41.110(c) ("Bd.R. 110(c)") requires that "[a]ny motion to add or amend a claim must include: …[a] claim chart showing where the disclosure of the patent or application provides written description of the subject matter of the claim…." A0024, ll. 6-10. Bamberg did not provide such a claim chart with its Motion 5. A0026, ll. 10. Even after Dalvey pointed out Bamberg's lack of compliance with the rule, Bamberg failed to provide a claim chart. *See* A0026, ll. 11-16.

Despite determining that Bamberg had failed to comply explicitly with Bd.R. 110(c), the Board nonetheless gave Bamberg the benefit of the doubt and considered Bamberg's statement of facts in support of its Motion 5. *See* A0028, l. 10 – A0029, l. 6. Yet, after careful analysis thereof, the Board properly found that Bamberg's statement of facts likewise failed to fulfill the remaining requirements of Bd.R. 110(c). A0028, ll. 10-12. As such, the Board correctly denied Bamberg's Motion 5 to amend the claims.

In any event, the Board's denial of Bamberg's Motion 5 is not relevant to the ultimate determination of the Board. Bamberg's Motion 5 addressed written description support for only certain claim limitations, which did **not** include, among other things, the "white layer" limitation. As such, a reversal of the Board's denial of Bamberg's Motion 5 to amend the claims does not change the Board's findings that the involved claims, having scope covering embodiments where the "white layer" is fusible at temperatures below 220° C, were not patentable to Bamberg. *See* A0021, l. 23 – A0022, l. 3.

**ARGUMENT**

## I.   THE BOARD CORRECTLY DETERMINED THE SCOPE OF THE CLAIMS AT ISSUE BASED ON THE DALVEY DISCLOSURE

### A.   The Board Properly Followed *Agilent*[4]

Contrary to Bamberg's assertions (*see, e.g.,* Appellants' Brief, p. 23, ll. 6-8; ll. 16-18), the Board did not improperly compare the specifications of the Dalvey patents with the specification of the Bamberg application before construing the "white layer" limitation; Bamberg's assertions mischaracterize the Board's analysis.  Although the Board reviewed both the Dalvey disclosure and the Bamberg disclosure in making its determinations, it explicitly followed *Agilent* when it interpreted the claims:  "'[w]hen interpretation is required of a claim that is copied for interference purposes, the copied claim is viewed in the context of the patent from which it was copied.'"   A0021-22 (Board's aptly-named "*Agilent*-based Analysis").

The Board's analysis makes plain that it first determined an initial scope of the involved claims based on their plain language, ultimately determining that they did not include a melting temperature limitation for the "white layer."  *See* A0009-11.  In doing so, the Board, gave substantial deference to Bamberg's position that

---

[4] While Bamberg did not initially concede that *Agilent* applied, instead arguing that the principles of *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) applied (*see* A0022, ll. 5-8), Bamberg appears to now agree that *Agilent* is controlling (*see* Appellants' Brief, p. 17, ll. 8-10).

15

the claims did not expressly include a melting temperature limitation for the "white layer." *See* A0009, l. 10 – A0010, l. 2. As a result of this initial analysis, the Board determined that the involved claims included, within their scope, (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, **as well as** (2) embodiments in which the "white layer" is fusible at temperatures below 220° C. A0011, ll. 22-26. That is, based on its conclusion that the claims did not include a melting temperature limitation for the "white layer" as Bamberg continues to assert, the Board properly determined that the scope of the claims covered embodiments **both where the "white layer" is fusible or non-fusible at temperatures below 220° C**.

Understanding that the Board need only focus on embodiments where the "white layer" is fusible at temperatures below 220° C, the Board, in accordance with *Agilent*, turned to the Dalvey disclosure. *See* A0016, ll. 1-5. In this part of its analysis, the Board concluded that the Dalvey disclosure does not describe a minimum melting temperature (A0017, ll. 3-4), and, in fact, discloses numerous suitable melting temperatures falling below 220° C (A0017, l. 9 – A0018, l. 3).

Turning to Bamberg, the Board considered each of Bamberg's disclosures (*see* A0012-14), the testimony of the inventor, Ulf Bamberg (*see* A0014-15), and the testimony of both Dalvey's and Bamberg's experts (*see* A0018-19). The Board concluded that the "Bamberg white layer must be made of plastics that are non-

16

fusible at ironing temperatures 'up to about 220°C'" (A0021, ll. 15-17).  Thus, the Board concluded that Bamberg's disclosure did not support the same "generic" scope supported by Dalvey's disclosure; therefore, the involved claims, having scope covering at least those embodiments where the "white layer" is fusible at temperatures below 220° C, were not patentable to Bamberg.  *See* A0021, l. 23 – A0022, l. 3.

Bamberg takes issue with the "ordering of the Board decision."  Appellants' Brief, p. 17, ll. 14-18.  However, the "ordering of the Board decision" relates strictly to the written format chosen by the Board for its Decision on Motions. Despite the Board's choice of format, the Board made abundantly clear that it followed the *Agilent* process.  A0021-22 (Board's aptly-named "*Agilent*-based Analysis").

Thus, despite Bamberg's protests, the Board properly followed the *Agilent* process.  That is, the Board interpreted the claims in view of Dalvey's disclosure, holding that they at least covered embodiments where the "white layer" is fusible at temperatures below 220° C, and then determined whether Bamberg's disclosure supported such claim scope.  The Board determined Bamberg's disclosure did not.

## B.    The Board Did Not Import a Functional Limitation Into the Claims

Despite Bamberg's unrelenting repetition of its assertion that the Board erroneously construed the "white layer" limitation to include a functional

limitation that the "white layer" melt and mix at application temperatures below 220° C (*see* Appellants' Brief, p. 18, ll. 7-10; p. 18, ll. 12-13; p. 23, ll. 4-6; p. 23, ll. 10-11; p. 24, ll. 3-6; p. 26, ll. 19-20; p. 27, ll. 20-22; p. 28, ll. 19-20; p. 30, ll. 1-3), the Board did not, in fact, add **any** limitations to the claims. Rather, as described above, the Board merely interpreted the scope of the claims.

Specifically, the Board determined the scope of the claims based on their plain language as well as Dalvey's disclosure. The Board concluded that, on their face, the involved claims did not include a melting temperature limitation for the "white layer." *See* A0009-11. As a result, the Board determined that the involved claims included, within their scope, (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, as well as (2) embodiments in which the "white layer" is fusible at temperatures below 220° C. A0011, ll. 22-26. That is, because the claims do not include a melting temperature limitation for the "white layer"—a conclusion with which Bamberg agrees—the Board correctly determined that the scope of the claims covered both embodiments in which the "white layer" is fusible at temperatures below 220° C, and embodiments in which the "white layer" is non-fusible at temperatures below 220° C.

At the very least, when construed properly under *Agilent* in view of Dalvey's disclosure, the involved claims include, within their scope, the specific embodiments disclosed by Dalvey. "[C]ourts should not construe patent terms to

exclude disclosed embodiments…." *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, No. C-04-1268 VRW, 2006 WL 825460, at *6 (N.D. Cal. Mar. 30, 2006) (citing *C R Bard, Inc. v. U. S. Surgical Corp.*, 388 F.3d 858, 865 (Fed. Cir. 2004)); *see also SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) ("A claim construction that excludes a preferred embodiment…is rarely, if ever, correct.") (quotation and citation omitted).  Dalvey discloses that the "white layer" melts at a wide range of temperatures, from 20° C to 300° C.  *See, e.g.*, A1842, 6:10-13 (40° C to 220° C); A1842, 6:30-33 (20° C to 225° C); A1842, 6:55-56 (same); A1843, 7:9-10 (43° C to 300° C); A1844, 10:63-68 (200° F to 400° F).  Thus, Dalvey discloses embodiments where the "white layer" melts at temperatures below 220° C, as well as embodiments where the "white layer" melts at temperatures above 220° C.  Importantly for this appeal, Dalvey discloses embodiments where the "white layer" melts at temperatures below 220° C, and thus, the involved claims must include, within their scope, embodiments where the "white layer" is fusible at temperatures below 220° C.

To reiterate, the Board did not add any limitations to the claims.  Instead, pursuant to its *Agilent* analysis, the Board merely interpreted the scope of the claims to at least cover, among other embodiments, embodiments where the "white layer" is fusible at temperatures below 220° C.  A0011, ll. 22-26.  Based on this determination of scope and a subsequent analysis of Bamberg's disclosure, the

Board determined that Bamberg's disclosure did not support such claim scope.  *See* A0021, l. 23 – A0022, l. 3.

Despite Bamberg's incessant assertions, there is a significant difference between importing limitations into a claim, as Bamberg argues, and merely determining embodiments that fall within the claim's scope.  Importing a limitation into the claim, such that it becomes a required limitation of the claim, would require that all embodiments falling within the scope of the claim also include that limitation.  *See Cephalon, Inc. v. Watson Pharm., Inc.*, 707 F.3d 1330, 1340 (Fed. Cir. 2013) ("To prove infringement, the patentee must show that an accused product embodies all limitations of the claim either literally or by the doctrine of equivalents.").  Bamberg asserts that the Board imported into the claims a requirement that the "white layer" melt and mix at application temperatures below 220° C (*see* Appellants' Brief, p. 18, ll. 7-10; p. 18, ll. 12-13; p. 23, ll. 4-6; p. 23, ll. 10-11; p. 24, ll. 3-6; p. 26, ll. 19-20; p. 27, ll. 20-22; p. 28, ll. 19-20; p. 30, ll. 1-3).  If the Board had done that, however, the Board would have required that **all** embodiments falling within the scope of the claim include a "white layer" that melts and mixes at application temperatures below 220° C.  *See Cephalon*, 707 F.3d at 1340.  The Board explicitly did not do this.  Instead, the Board determined that the involved claims included, within their scope, **both** (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, as well

20

as (2) embodiments in which the "white layer" is fusible at temperatures below 220° C. A0011, ll. 22-26. Accordingly, the Board did not import into the involved claims a functional limitation that the "white layer" melt and mix at application temperatures below 220° C (*see* Appellants' Brief, p. 18, ll. 7-10; p. 18, ll. 12-13; p. 23, ll. 4-6; p. 23, ll. 10-11; p. 24, ll. 3-6; p. 26, ll. 19-20; p. 27, ll. 20-22; p. 28, ll. 19-20; p. 30, ll. 1-3); such a construction necessarily would **preclude** the claims from also including in their scope embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C.

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FACT DETERMINATIONS

### A. Standard of Review

Compliance with the written description requirement is a question of fact, which this Court reviews for substantial evidence. *Falkner v. Inglis*, 448 F.3d 1357, 1363 (Fed. Cir. 2006); *Stevens v. Tamai*, 366 F.3d 1325, 1330 (Fed. Cir. 2004). "Substantial evidence is defined as that which a reasonable person might accept as adequate to support a conclusion," and "[a]n agency decision can be supported by substantial evidence[] even where the record will support several reasonable but contradictory conclusions." *Falkner*, 448 F.3d at 1363-64. This Court "must affirm the Board's factual determinations if they are supported by substantial evidence." *Hitzeman v. Rutter*, 243 F.3d 1345, 1353 (Fed. Cir. 2001).

**B.** **All of Bamberg's Involved Claims Include, Within Their Scope, a "White Layer" that Melts at Temperatures Below 220° C and Mixes with Other Layers[5]**

Each of the involved claims requires a white background for receiving an image, as set forth below:

| Bamberg Application | Claims | "White Layer" Limitation |
|---|---|---|
| 13/182,197 | 23-34 | Each claim requires a layer with "a pigment [with] a concentration or configuration sufficient to provide an opaque… background" for received indicia |
| 13/177,284 | 30-49 | Each claim requires a layer with a "pigment" providing an "opaque… background" for received indicia |
| 13/223,541 | 1-17 | Each claim requires "a release layer... impregnated with... titanium oxide or other white pigment or luminescent pigment" |
| 13/207,236 | 1, 2, 5-14[6] | Each claim requires a layer with a "pigment" providing an "opaque... background" for received indicia |

Construed in light of the specification of the Dalvey disclosure—as all parties agree these claims must be—these claims include, within their scope, embodiments in which the white or opaque layer melts at temperatures below 220° C and mix with other layers.  Indeed, Dalvey explicitly discloses that the "white layer" melts at a wide range of temperatures, from 20° C to 300° C.  *See, e.g.*, A1842, 6:10-13

---

[5] See Footnote 3, *supra*, for a discussion of melting and mixing of the "white layer."

[6] Claim 4 depends from a canceled claim.

(40° C to 220° C); A1842, 6:30-33 (20° C to 225° C); A1842, 6:55-56 (same); A1843, 7:9-10 (43° C to 300° C); A1844, 10:63-68 (200° F to 400° F). Dalvey discloses embodiments where the "white layer" melts at temperatures below 220° C, and thus, substantial evidence—that which a reasonable person might accept as adequate to support a conclusion—supports the Board's factual determination that the involved claims include, within their scope, at least embodiments where the "white layer" is fusible at temperatures below 220° C.

### C.    The Board Correctly Found that Bamberg's Claims Failed to Meet The Written Description Requirement

#### 1.    *Bamberg's Disclosure Does Not Provide Written Description Support for a "White Layer" that Melts at Temperatures Below 220° C and Mixes with Other Layers*

Bamberg describes only transfer system embodiments incorporating a "white layer" that must not melt at temperatures below 220° C and must not mix, to any extent, with other layers. In fact, Bamberg's disclosure repeatedly emphasizes that the white layer is prohibited from melting at temperatures of the iron used to apply an image to a t-shirt, i.e., temperatures below 220° C:

- "The white background layer which is found directly on the adhesive layer, according to the present invention, comprises or is composed of permanently elastic plastics which are **non-fusible at ironing temperatures (i.e. up to about 220º C) and which are filled with white pigments – also non-**

**fusible (up to about 220º C)**.”    A1390, l. 31 – A1391, l. 1 (emphasis added).

- “Suitable pigments are **only** those which do not melt at ironing on temperatures.” A1391, ll. 17-18 (emphasis added).

- “These pigments can be blended alone or also in a mixture with other **non-fusible** (up to 220º C) carrier agents such as for example silicates or aluminates.” *Id.* at ll. 30-32 (emphasis added).

- “Thus the present invention succeeds in providing a transfer system which has a white background layer in the print system itself, i.e. between the adhesive layer and the ink-receiving layer, whereby the entire system, **in spite of the non-fusible white background layer**, surprisingly fulfills the following requirements….” A1391, l. 33 – A1392, l. 3 (emphasis added).

- “The coating method comprises the following steps: ...b) application of a white background layer composed of elastic plastics **which are non-fusible at ironing on temperatures (i.e. up to about 220º C)**....” A1400, ll. 6-17 (emphasis added).

- All of the claims in the priority PCT application required “a white background layer composed of elastic plastics which are non-fusible at temperatures up to 220º C.” A1404-06, claims 1-16.

Because the “white layer” of the Bamberg specification cannot melt at conventional iron-pressing temperatures, it also necessarily does not mix, to any

extent, with any other layers of the Bamberg transfer system, such as the indicia layer or the adhesive layer. Bamberg also makes this explicitly clear:

- "The elastic plastics must not melt at ironing temperatures in order not to provide with the adhesive layer, e.g. the hot-melt, which provides the adhesion to the textile substrate, an undesired mixture with impaired (adhesive and covering) properties." A1391, ll. 1-6.

- "The glued lamellar structure is in a way a sandwich structure in which the white background layer is glued to the textile substrate, whereby **no mixing of the background layer with the adhesive layer, e.g. a hot-melt layer, by a melting process is possible**...." A1393, ll. 1-5 (emphasis added).

- "The adhesive layer has to be essentially or completely fusible and must only be adhesive in a fused condition." *Id.* at p. 9:9-11. "On the other hand, the holt-melt layer also has to mediate a good adhesion to the white background layer which is **chemically totally different** (not wax-like, **nonfusible**)." *Id.* at ll. 18-21 (emphasis added).

- "During the ironing on, **the hot-melt layer and the ink-jet receiving layer, but not the white background layer are molten**. This way, the image imprinted on the ink-receiving layer is transferred on the textile substrate without any fusing-associated distortions." A1399, ll. 13-18 (emphasis added).

25

The U.S. Patent & Trademark Office confirmed that the "white layer" of Bamberg's transfer paper cannot melt and mix with other layers at conventional iron-pressing temperatures.  During prosecution of U.S. Pat. Appl. No. 13/930,116, the examiner rejected the applicant's attempt to claim a white layer with "a softening point temperature less than about [220°] C."    A1829, ¶¶ 2, 3. Furthermore, the inventor, Ulf Bamberg, confirms that he did not possess an invention with a "white layer" that melts at conventional iron-pressing temperatures and mixes, to any extent, with the adhesive layer at the time he filed his application.    A1911, ¶ 9 (Bamberg testified that "we developed a white background layer that nonetheless formed a strong bind with the ink-receiving layer but did not melt at conventional iron-pressing temperatures (i.e., temperatures up to about 220º C).").

As such, substantial evidence also supports the Board's factual determination that the Bamberg "white layer" "must be made of plastics that are non-fusible at ironing temperatures 'up to about 220°C'."  A0021, ll. 15-17.

2.    *Bamberg's Assertion That Its Specification Has Adequate Written Description For "White Layer" That Is Fusible at Temperatures Below 220° C Is Fatally Flawed*

Bamberg's assertion that its specification has adequate support for a "white layer" that is fusible at ironing temperatures by "intentionally exclude[ing] a fusible white layer" from the disclosure (*see* Appellants' Brief, pp. 37-38) is fatally

flawed.  **First**, the only evidence Bamberg cites is the statement in the Bamberg disclosure that:  "The filled white layer...must not melt, because otherwise the white pigments would sink or penetrate, respectively into the textile substrate. Associated with this would be a reduction or even a destruction, respectively, of the white background color...."  A1391, ll. 18-24.  Not only does this section fail to support Bamberg's argument, it firmly supports the Board's conclusion that the Bamberg disclosure **does not** provide written description support for a "white layer" that is fusible at temperatures below 220° C.  Bamberg does not cite **any** other evidence from the disclosure to support its argument (*see, e.g.*, Appellants' Brief, p. 37, l. 19 – p. 38, l. 2; p. 38, ll. 9-10; p. 40, ll. 2-3 (asserting a "full range of temperatures" is disclosed, without citation to Bamberg's disclosure); p. 42, ll. 12-13; p. 42, ll. 16-18.

**Second**, Bamberg suggests that a "white layer" that is fusible at ironing temperatures is merely a "non-preferred embodiment" of Bamberg's disclosure. Appellants' Brief, p. 37, l. 21 – p. 38, l. 2.  However, in even Bamberg's own words, such embodiments are not "non-preferred" embodiments, but are "**intentionally exclude[d]**" (Appellants' Brief, p. 38, ll. 9-10 (emphasis added)) embodiments.

Bamberg's reliance on *Bilstad v. Wakalopulos*, 386 F.3d 1116 (Fed. Cir. 2004) is misplaced.  Appellants' Brief, p. 36, ll. 21-24; p. 38, ll. 3-8.  While

Bamberg is correct that *Bilstad* holds that disclosure of a species **may** be sufficient written description support for a later claimed genus including that species, in *Bilstad*, this Court explains that there are exceptions to the general rule. *Id.* at 1124-25. This Court recognized that the distinction is based on what would be reasonably conveyed to a person skilled in the art at the time of the original disclosure. *Id.* at 1125. For example, this Court held that "[i]f the difference between members of the group is such that the person skilled in the art would not readily discern that other members of the genus would perform similarly to the disclosed members,…then disclosure of more species is necessary to adequately show possession of the entire genus." *Id.* In the present case, not only has Bamberg not disclosed enough such that a person skilled in the art would readily discern that other members of the alleged genus (i.e., "white layers" that are fusible at temperatures below 220° C) would perform similarly, but Bamberg explains that a "white layer" that is fusible at temperatures below 220° C would, in fact, **not** perform similarly and, in Bamberg's own words, are "**intentionally exclude[d]**." Appellants' Brief, p. 38, ll. 9-24 (emphasis added). Accordingly, contrary to Bamberg's understanding, *Bilstad* does not support Bamberg's position.

**Third**, based on his review of the Bamberg disclosure, Dalvey's expert Dr. Scott A. Williams opined that a person of ordinary skill in the art would understand that Bamberg did not possess an invention that included a "white layer" that melted

28

or was fusible at temperatures below 220° C.  A1848-50.  On the other hand, Bamberg's own expert, Dr. William M. Risen, Jr. failed to explain how any portion of Bamberg's specification disclosed a "white layer" that melted or was fusible at temperatures below 220° C.  *See* A0019, ll. 5-7.

**Fourth**, where specific features are, in the words of Bamberg, "intentionally exclude[d]" (Appellants' Brief, p. 38, ll. 9-10), those features are also excluded from the scope of the corresponding claims.  *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001) ("Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question.").  Thus, contrary to Bamberg's understanding, this Court's precedent confirms that Bamberg lacks support for a "white layer" that is fusible at temperatures below 220° C.

Accordingly, Bamberg's assertion that its specification has adequate support for a "white layer" that is fusible at ironing temperatures merely by "intentionally exclude[ing] a fusible white layer" embodiment (*see* Appellants' Brief, pp. 37-38 is patently incorrect.

**D.**    ***McMullin* Is On Point; Bamberg's Alternative Cases Are Not**

1.    *McMullin*

Despite Bamberg's protests, *McMullin v. Carroll*, 153 F. App'x 738 (Fed. Cir. 2005) is squarely on point with the facts of this case.  In *McMullin*, Carroll owned two patents on golf shoes with cleats having outward angulation to provide lateral stability and traction during a golf swing.  *Id.* at 739.  McMullin copied the claims from Carroll's patents to provoke an interference.  *Id.*  However, the copied claims, properly construed in light of the Carroll specification, did not limit the range of angle of the outwardly angled cleats.  McMullin's specification, however, did limit the outward angle:  it disclosed traction teeth that were outwardly angled at an angle of up to 15° "without indicating that the disclosed angles were merely a preferred subset of the angles contemplated for the traction teeth of the invention." *Id.* at 741.  This Court, therefore, found that McMullin's specification did not provide written description support indicating possession of the full breadth of the disputed claims.  *Id.* at 744–45.

Bamberg attempts to distinguish *McMullin* by asserting that the "outward angulation" limitation not sufficiently described in McMullin's specification was an express limitation.  Appellants' Brief, p. 28, ll. 15-19.  However, Bamberg misses the point.  In *McMullin*, this Court determined that McMullin's specification did not indicate possession of the full breadth of the claims as

30

properly construed in light of the Carroll specification, which did not limit the range of angle of the outwardly angled cleats. *See McMullin*, 153 F. App'x at 744–45. Like *McMullin*, the Board determined, and Bamberg agrees, that each of the claims in the present matter **expressly** recite a "white layer" limitation **that is not, however, limited by the melting temperature**. *See* A0009, l. 10 – A0011, l. 21; Appellants' Brief, p. 14, ll. 19-20. Accordingly, the Board correctly determined, in light of Dalvey's disclosure, that the involved claims covered, within their scope, both embodiments in which the "white layer" is fusible at temperatures below 220° C and embodiments in which it is non-fusible at such temperatures. A0011, ll. 22-26. Having defined the breadth of scope permitted by the claims, the Board determined, pursuant to *McMullin*, whether Bamberg's disclosure provides the written description support indicating possession of this full breadth of the claims. The Board, supported by substantial evidence, determined that Bamberg's disclosure does not.

In fact, the facts in this case are even clearer than those in *McMullin*. Unlike in *McMullin*, the Bamberg specification in this case not only fails to disclose a "white layer" that melts at temperatures below 220° C, it explicitly teaches against such a feature (*see* Section II(C), *supra*), only cementing that Bamberg lacks written description support for the claims copied from Dalvey.

2.     *Liebel-Flarsheim*

Contrary to Bamberg's belief, *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004) is not on point.  In *Liebel-Flarsheim*, this Court concluded that the district court erred in construing the claims at issue to require pressure jackets, even though none of the asserted claims expressly referred to a pressure jacket.  *Id.* at 901, 912.  That is, the Court concluded that the district court erred by importing an **extraneous** limitation into the asserted claims.  In the present case, the Board **did not**, in fact, import **any** extraneous limitations into the claims.  Rather, as plainly laid out in the Board's decision, and as described above, the Board merely interpreted the claims as including within their scope, (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, as well as (2) embodiments in which the "white layer" is fusible at temperatures below 220° C.  A0011, ll. 22-26.  Accordingly, *Liebel-Flarsheim* is not applicable.

3.     *Comark Communication*

*Comark Communication, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998) is likewise not applicable.  In *Comark*, this Court refused to limit a phrase of the asserted claim to its functional purpose as disclosed in a preferred embodiment. *See id.* at 1186, 1193.  *Comark* is inapplicable to this case for the same reasons *Liebel-Flarsheim*, is inapplicable.  Unlike in *Comark*, the Board in this case did not

limit the claims in any way, and certainly did not limit them to a preferred embodiment.    As noted, the Board interpreted the claims to include (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, as well as (2) embodiments in which the "white layer" is fusible at temperatures below 220° C.    A0011, ll. 22-26.    Accordingly, *Comark* is not applicable.

However, even this Court in *Comark* recognized that the claims are, nonetheless, to be interpreted in light of the specification.    *See* 156 F.3d at 1186-87.    In doing just that, this Court affirmed the district court's interpretation of a claim limitation of the asserted claim **that went beyond the mere language of the claim**.    *Id.* at 1186, 1193 (affirming district court's interpretation of the claim limitation "video delay signal for receiving and delaying the video signal to provide a delayed video signal" in light of the specification to mean "a circuit that provides to the complementary non-linear amplifier a video signal that is delayed in time").    In accordance with *Comark*, the Board, in the present case, did nothing more than interpret the scope of the claims in light of Dalvey's disclosure.

### E.    Even If Bamberg's Argument Were Reasonable, The Board's Determination Must Stand

As demonstrated above, substantial evidence supports the Board's factual determinations.    Moreover, "[a]n agency decision can be supported by substantial evidence[] even where the record will support several reasonable but contradictory

33

conclusions." *Falkner*, 448 F.3d at 1363-64.  Thus, even if Bamberg's arguments were reasonable, which they are not, the Board's factual determinations must stand.

## III.  BAMBERG'S ALTERNATIVE CONSTRUCTIONS OF "WHITE LAYER" DO NOT CHANGE THE RESULT

Bamberg's proposed alternative constructions of a "white layer" lead to the same result, *i.e.*, that Bamberg lacks written description support for the claims copied from Dalvey.[7]

### A.  Dalvey Defined "White Layer" Term Not Used In Most Claims; Still Includes, Within Its Scope, "White Layer" Fusible At Temperatures Below 220° C

Bamberg's argument that the Board should have used the express definition of "white layer" from Dalvey's disclosure is incorrect.  Appellants' Brief, p. 27, ll. 13-14.  Not all of the claims at issue actually use the term "white layer," and in fact, most do not.  *See* A1233-40, all claims; A0221-30, claims 31-40, 46, and 47; A0576-79, claims 1, 2, 4, 6-10, 12, and 13; A1375-77, claims 1-15.  "In the absence of any evidence to the contrary, we must presume that the use of...different terms in the claims connotes different meanings."  *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (citation and

---

[7] Oddly, Bamberg offers at least **three** alternative constructions for "white layer," even though Bamberg **itself** describes the construction of "white layer" to be "**clear**."  Appellants' Brief, p. 29, ll. 20-22 (emphasis added).

quotation omitted). Accordingly, such a proposed definition has limited value in determining the scope of all the involved claims.

Moreover, the definition of "white layer" from Dalvey's disclosure, like the claims themselves, does not expressly require a melting and mixing limitation. A1947, 3:33-36. Thus, Dalvey's disclosed definition of "white layer" does not alter the Board's determination that the involved claims include, within their scope, (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, as well as (2) embodiments in which the "white layer" is fusible at temperatures below 220° C. A0011, ll. 22-26. As a result, use of Dalvey's disclosed definition of "white layer" would lead to the same result, *i.e.*, that Bamberg lacks written description support for the claims copied from Dalvey.

## B. The Broadest Reasonable Interpretation of "White Layer"

Bamberg's assertion that the claims should alternatively be given their broadest reasonable construction is similarly flawed. Appellants' Brief, p. 32, ll. 17-19. Bamberg asserts that under a "broadest reasonable interpretation," the "white layer" limitation should be construed as requiring only that it have sufficient pigment to provide an opaque background, and that it remains opaque when transferred. Appellants' Brief, p. 34, ll. 13-16. However, such construction of "white layer," like the claims themselves, does not expressly require a melting and mixing limitation. Thus, Bamberg's proposed "broadest reasonable

interpretation" construction of "white layer" does not alter the Board's determination that the involved claims include, within their scope, (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, as well as (2) embodiments in which the "white layer" is fusible at temperatures below 220° C. A0011, ll. 22-26. As a result, use of Bamberg's proposed "broadest reasonable interpretation" construction of "white layer" would lead to the same result, i.e., that Bamberg lacks written description support for the claims copied from Dalvey.

### C.    Bamberg's "Alternative" Construction of "White Layer."

Bamberg's "alternative" proposed construction fails to change the result for much the same reason. Bamberg asserts that the only other construction that may have been considered by the Board is that the "white layer" be required to "melt and mix" with other layers, without any temperature limit. Appellants' Brief, p. 34, ll. 18-20. However, such construction of "white layer," lacking an express limitation of a melting temperature, does not alter the Board's determination that the involved claims include, within their scope, (1) embodiments in which the "white layer" is non-fusible at temperatures up to about 220° C, as well as (2) embodiments in which the "white layer" is fusible at temperatures below 220° C. A0011, ll. 22-26. As a result, use of Bamberg's "alternative" construction of

"white layer" would lead to the same result, i.e., that Bamberg lacks written description support for the claims copied from Dalvey.

Moreover, under a construction where the "white layer" is required to mix, as Bamberg proposes, Bamberg even more clearly lacks written description support. Specifically, Bamberg's disclosure makes explicitly clear that "no mixing of the background layer…by a melting process is possible…." A1393, ll. 1-5; *see also* A1391, ll. 1-6; A1393, ll. 18-21; A1399, ll. 13-18. Despite its damaging effect on Bamberg, Bamberg concedes that such a proposed construction is consistent with *Agilent* and *Phillips*. Appellants' Brief, p. 35, ll. 14-15.

## IV.    THE BOARD CORRECTLY DENIED BAMBERG'S MOTION 5 TO AMEND THE CLAIMS

### A.    The Board's Decision

Contrary to Bamberg's argument, the Board correctly denied Bamberg's Motion 5 to amend the claims. Notably absent from Bamberg's Brief are any references to the Board's quite lengthy explanation for denying Bamberg's Motion 5. To be sure, the Board did not whimsically deny Bamberg's Motion 5, but plainly denied Bamberg's Motion 5 only after thoughtful and careful consideration.

Specifically, the Board first recognized that Bd.R. 110(c) requires that "[a]ny motion to add or amend a claim must include: …[a] claim chart showing where the disclosure of the patent or application provides written description of the subject matter of the claim…." A0024, ll. 6-10. The Board also recognized that

the Standing Order for the interference confirmed that compliance with Bd.R. 110(c) is required.  *Id.* at ll. 11-15; *see also* A0135.  Subsequently, the Board provided numerous reasons for the rule, identifying efficiencies resulting from compliance with the rule as well as complications resulting from noncompliance with the rule.  A0024, l. 20 – A0026, l. 8.  The Board additionally confirmed that, pursuant to 37 C.F.R. §41.121(b), it was Bamberg's burden to establish that the claims were supported by an adequate written description.  A0028, ll. 2-3. Consistent with the foregoing, the Board determined that all, not just some, limitations in the proposed claims needed to be supported by an adequate written description, and that the Director of the U.S. Patent & Trademark Office determined that the burden of establishing such adequate written description is best satisfied with a claim chart.  A0028, ll. 4-9.

In violation of this rule, Bamberg did not provide a claim chart with its Motion 5.  A0026, ll. 10.  Bamberg failed to do so even after Dalvey pointed out its failure.  *See* A0026, ll. 11-16.  The Board recognized that Bamberg had attempted to subtly and improperly shift its burden to Dalvey.  A0029, ll. 7-8.  Moreover, the Board admonished Bamberg for its allegations that it had an "inability" to respond to Dalvey's Opposition 5, explaining that any "inability" Bamberg had was a "self-imposed hardship brought on by Bamberg's failure to supply a claim chart in the first instance."  *Id.* at 9-15.

Thus determining that Bamberg had failed to comply with Bd.R. 110(c), the Board nonetheless considered Bamberg's statement of facts in support of its Motion 5. *See* A0028, l. 10 – A0029, l. 6. After careful analysis thereof, the Board correctly found that even Bamberg's statement of facts improperly detailed only where some, but not all, of the claimed limitations were allegedly supported by Bamberg's disclosure. A0028, ll. 10-12. Moreover, with respect to those allegedly detailed in Bamberg's statement of facts, the Board found significant problems. A0028, l. 15 – A0029, l. 6.

Only after full and detailed consideration of the foregoing did the Board deny Bamberg's Motion 5. A0029, l. 17. Accordingly, the Board properly denied Bamberg's Motion 5 to amend the claims.

## B.    Bamberg's Argument That It Cannot Provide a Claim Chart to Prove a Negative is Flawed

Bamberg's argument that the Board erred in denying its Motion 5 because it would have been impossible for Bamberg to provide a claim chart showing where in the specification support for deleted material could be found is flawed. As noted above, Bd.R. 110(c) explicitly requires that "[a]ny motion to add or amend a claim must include: …[a] claim chart showing where the disclosure of the patent or application provides written description of the subject matter of the claim…." Notably, Bd.R. 110(c) does not limit the requirement of providing written description support for only those portions of the claims amended, as Bamberg

appears to believe.  Rather, Bd.R. 110(c) requires written description support be provided for the entire "subject matter of the claim."  Bamberg did not provide a claim chart showing written description support for **any** of the subject matter of its proposed claims, improperly shifting the burden instead to Dalvey to figure out whether the proposed claims are adequately supported.  A0028, ll. 13-14.

### C.    Bamberg's Argument That it Explained Support For the Amended Claims in the Statement of Facts Is Also Flawed

Bamberg's argument that the Board erred in denying its Motion 5 because it did show where written description for the proposed claims could be found in the statement of material facts in support of the motion is likewise flawed, and additionally, misses the point.  Appellants' Brief, p. 44, ll. 8-10.  **First**, as stated above, Bd.R. 110(c) explicitly requires that "[a]ny motion to add or amend a claim must include: …[a] claim chart showing where the disclosure of the patent or application provides written description of the subject matter of the claim…."  The rule does not permit parties to fulfill that obligation by merely explaining support in a statement of material facts.  Indeed, the Board recognized that Bamberg's alleged explanations of written description support in its statement of material facts resulted in significant problems.  A0028, l. 15 – A0029, l. 6.  The plain and simple fact is that Bamberg, in violation of Bd.R. 110(c), did not provide the required claim chart showing written description support.  A0028, ll. 13-14.

40

**Second**, even if it was sufficient to provide an explanation of written description support for the proposed claims in the statement of material facts in support of its motion, Bamberg fails to identify where an explanation of support for every limitation of every claim, as a claim chart would certainly provide, is provided in its statement of material facts. Instead, Bamberg attempts to unearth any part of its statement of material facts where support might possibly be found for a small, limited set of claim limitations. *See* Appellants' Brief, p. 44, ll. 10-18. Even the Board recognized this. *See* A0028, ll. 10-12.

### D.    The Board Did Not Err By Not Redeclaring the Interference With A Narrower Scope.

The Board did not err by not exercising its discretion to redeclare the interference with a narrower scope. **First**, contrary to Bamberg's argument, the Board exercised its discretion in defining a phantom count when it left it to the parties to determine if a phantom count could be agreed upon. Interference 105,964, Order Motion Times Bd. R. 104(c), Paper No. 36, p. 3, ll. 8-15. The fact that, despite good faith efforts, the parties could not agree on a phantom count (Interference 105,964, Order Motion Times Bd. R. 104(c), Paper No. 39, p. 2, ll. 5-8) is no fault of the Board's. If Bamberg believed a phantom count was necessary, it could have strived to agree on a phantom count with Dalvey. The Board's decision should not be overturned now simply because Bamberg feels it made a

mistake early on by failing to come to an agreement, with Dalvey, on a phantom count.

**Second**, if Bamberg wanted to instead fight over a narrower claim scope, Bamberg certainly could have drafted claims with the desired scope, and then suggested an interference in accordance with 37 C.F.R. §41.202. Instead, Bamberg opted to copy Dalvey's patented claims **exactly**, and in doing so, **intentionally included the full scope of the claims as construed in light of Dalvey's disclosure**. This was a choice falling solely and squarely within Bamberg's control; this was neither Dalvey's decision nor the Board's decision. The Board's decision should not be overturned now simply because Bamberg feels it made a mistake in copying Dalvey's claims exactly.

**Third**, while Bamberg summarily argues that it is inconsistent with the purpose of 35 U.S.C. §135(a) and 37 C.F.R. §41 for the Board to find and acknowledge an overlap of the interfering subject matter and then prevent the senior party from amending its claims to allow that determination to go forward, Bamberg provides no reasoning as to how the Board's decision is, in fact, inconsistent with the purpose of 35 U.S.C. §135(a) and 37 C.F.R. §41, nor does Bamberg cite to any case law supporting its position. Appellants' Brief, p. 45, ll. 17-21. In effect, Bamberg's argument appears to be that the Board is wrong simply because it did not decide in Bamberg's favor.

42

Moreover, despite Bamberg's conclusory allegation, the Board's finding is entirely consistent with the purpose of 35 U.S.C. §135(a) and 37 C.F.R. §41. Specifically, 37 C.F.R. §41.201 ("Bd.R. 201") provides for "threshold issues" that preliminarily determine whether an opponent has standing in an interference. Specifically, a "threshold issue," as defined by Bd.R. 201, "means an issue that, if resolved in favor of the movant [Dalvey], would deprive the opponent [Bamberg] of standing in the interference." Unpatentability for lack of written description under 35 U.S.C. §112(a) is identified as one such "threshold issue." *Id.* Consistent with Bd.R. 201, the Board determined that Dalvey's Substantive Motion 3 ("Motion 3") raised a "threshold issue" and, therefore, took Dalvey's Motion 3 up for consideration first in order to determine whether Bamberg even had standing for the interference. A0005, ll. 5-7. As a result of its analysis of this "threshold issue," the Board determined that Bamberg did not have adequate written description support for its involved claims and, therefore, lacked standing in the interference. Accordingly, the Board's finding is entirely consistent with the gatekeeping procedures put in place pursuant to Bd.R. 201 to avoid improperly permitting inventorship challenges to proceed where parties do not have the requisite standing to make such challenges.

In view of the foregoing, the Board did not err by not exercising its discretion to redeclare the interference with a narrower scope.

**E.      Reversal of the Board's Denial of Bamberg's Motion 5 to Amend
the Claims Would Not Change the Result**

Even if the Court were to agree with Bamberg and reverse the Board's
denial of Bamberg's Motion 5 to amend the claims, such a holding would not
change the Board's findings regarding the scope of the involved claims.  *See*
A0021, l. 23 – A0022, l. 3.  Bamberg's proposed amended claims do not resolve
the written description and enablement issues raised by Dalvey in its Motion 3
relating to, among other things, the "white layer" limitation.  In fact, Bamberg
concedes that its Motion 5 was devoid of any proposed amendments addressing the
written description and enablement challenges relating to the "white layer"
limitation, instead opting to rely solely on argument.      A0498, ll. 9-12.
Accordingly, even if the amendments in Bamberg's Motion 5 were permitted,
Bamberg's claims still fail for lack of written description support for at least the
reasons explained herein as well as in the Board's Decision.

44

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For the foregoing reasons, Dalvey respectfully requests that this Court affirm the Board's Decision on Motions in its entirety.

Respectfully submitted,

Dated:  July 27, 2015              WINTHROP & WEINSTINE, P.A.

/s/ Paul J. Robbennolt
Devan V. Padmanabhan
Paul J. Robbennolt
Nathan J. Witzany
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
dpadmanabhan@winthrop.com
probbennolt@winthrop.com
nwitzany@winthrop.com

*Attorneys for Appellees*

**Form 30**

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

US mail
Fax
Hand
Electronic Means
(by email or CM/ECF)

Name of Counsel                                    Signature of Counsel

Law Firm

Address

City, State, ZIP

Telephone Number

FAX Number

E-mail Address

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

## <u>CERTIFICATE OF COMPLIANCE UNDER RULE 32(a)(7)(C)</u>

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), undersigned counsel states that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  This brief contains 10,594 words, not including the Certificate of Interest and Certificate of Service.


Dated:  July 27, 2015                    /s/ Paul J. Robbennolt_____
                                        *Counsel for Appellees*